UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANK E. PERRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>　　　　　Defendant. | CASE NO. 2:15-CV-01356-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") did not err in evaluating the medical opinion evidence or in evaluating Plaintiff's subjective symptom testimony. Further, even though the ALJ erred in failing to consider the lay witness

testimony, this error was harmless. Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

**<u>PROCEDURAL & FACTUAL HISTORY</u>**

On September 28, 2011, Plaintiff filed applications for DIB and SSI. *See* Dkt. 12, Administrative Record ("AR") 240-252. Plaintiff alleged he became disabled on December 1, 2009,[1] due to status post atrial myxoma resection, atrial fibrillation, and associated complications, including anxiety and depression. *See* AR 26, 48, 240, 247, 269. Plaintiff's applications were denied upon initial administrative review and on reconsideration. *See* AR 170, 173, 180, 185. A hearing was held before an ALJ on September 11, 2013, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 43.

On October 25, 2013, the ALJ found Plaintiff was not disabled within the meaning of Sections 1614(a)(3)(A), 216(i), and 223(d) of the Social Security Act. AR 35. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 19, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On August 24, 2015, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because the ALJ erred by failing to: 1) properly evaluate the medical opinion evidence; 2) properly evaluate Plaintiff's subjective symptom testimony; 3) properly evaluate the lay witness testimony; 4) properly assess Plaintiff's residual functional capacity ("RFC"); and 5)

---

[1] Plaintiff originally alleged a disability onset date of May 1, 2004. AR 240, 247. At the ALJ hearing, Plaintiff's attorney orally amended the disability onset date to December 1, 2009. AR 48.

1  find Plaintiff was unable to perform work existing in substantial numbers in the national

2  economy.  Dkt.17, pp. 1-2.

## STANDARD OF REVIEW

4  Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

5  security benefits only if the ALJ's findings are based on legal error or not supported by

6  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

7  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

8  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

10  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

12  The ALJ found Plaintiff had the RFC to perform light work, subject to additional

13  limitations to unskilled work with simple routine tasks, limitations preventing him from

14  engaging in fast production pace work, multitasking, and no more than occasional judgment and

15  decision making, and various limitations impacting his ability to climb ramps, stairs, ladders,

16  ropes, scaffolds, and in his ability to handle concentrated exposure to hazards such as machinery

17  and heights. AR 29. Plaintiff argues the ALJ erred by failing to consider the more restrictive

18  limitations opined to by three of Plaintiff's treating physicians, testified to by Plaintiff, and

19  testified to by two lay witnesses.

20  I.  Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

21  **A. Standard**

22  The ALJ has the responsibility to determine credibility and resolve ambiguities and

23  conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Where

24

the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 942 (9th Cir. 1982). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, when a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (*citing Andrews*, 53 F.3d at 1043. Further, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

## B. Application of Standard

Starting in July, 2012, Plaintiff obtained treatment for his physical and mental impairments through providers at Group Health Cooperative. *See* AR 73, 716-871, 951-1242. On September 8, 9, and 10, 2013, three of Plaintiff's treating providers at Group Health rendered opinions as to Plaintiff's physical and mental impairments and their associated limitations. AR 925-938.

### 1. Mark Leveaux, M.D.

Dr. Leveaux treated Plaintiff in August of 2013 for his mental impairments. AR 929. On September 9, 2013, Dr. Leveaux diagnosed Plaintiff with: panic attacks; major depression, recurrent; and generalized anxiety disorder. AR 929. Dr. Leveaux opined Plaintiff had an unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury, and also opined Plaintiff would have recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. AR 930. However, due to a lack of historical medical records for his review, the fact Dr Leveaux had only treated Plaintiff twice, and the fact Dr. Leveaux's examination was clinical in nature, Dr. Leveaux indicated he would not offer "capacity specific determinations." AR 931-34. Thus, Dr. Leveaux did not opine to any functional limitations arising out of Plaintiff's mental impairments.

### 2. Steven Tanaka, M.D.

Dr. Tanaka has treated Plaintiff since 2011 for his various heart conditions, including his atrial fibrillation. AR 925. On September 8, 2013, Dr. Tanaka completed a "cardiac arrhythmia medical source statement," where he indicated Plaintiff was experiencing chest pain, weakness, shortness of breath, palpitations, lightheadedness, chronic fatigue, nausea, and dizziness as a

result of his atrial fibrillation. AR 925. Dr. Tanaka also indicated Plaintiff was experiencing episodes lasting between 20-90 minutes in length, several times per day, after which Plaintiff needed to take one-to-two-hour naps. AR 925. As a result of his atrial fibrillation, Dr. Tanaka opined Plaintiff would be incapable of even low stress work. AR 926. Dr. Tanaka further opined Plaintiff would be unable to sit or stand for more than 30 minutes at a time, would not be able to sit, stand, or walk for more than two hours in an eight hour workday, and would need to take between four and six unscheduled breaks during a working day. AR 926-27.

### 3. Samara Laynor, M.D.

As with Dr. Tanaka, Dr. Laynor treated Plaintiff for his various heart conditions since 2011. AR 935. On September 10, 2013, Dr. Laynor completed a "cardiac arrhythmia medical source statement" identical to the one completed by Dr. Tanaka. AR 935. On this form, Dr. Laynor indicated Plaintiff experienced chest pain, shortness of breath, palpitations, and lightheadedness during daily atrial fibrillation episodes. AR 935. Dr. Laynor indicated Plaintiff's episodes lasted from 20 to 60 minutes in duration, and Plaintiff would rest for one hour after each episode. AR 935. Unlike Dr. Tanaka, however, Dr. Laynor opined Plaintiff would be capable of performing low stress work, would be able to sit and stand for more than two hours at a time, and would be able to stand, sit, and walk at least six hours out of an eight hour work day. AR 936-37. Dr. Laynor also opined Plaintiff would *not* need to take unscheduled breaks during a work day, would be able to lift fifty pounds frequently, and would have no environmental restrictions. AR 937-38.

The ALJ addressed Dr. Leveaux's, Dr. Laynor's, and Dr. Tanaka's opinions together, and gave deference to their opinions Plaintiff's "main issue was related to his anxiety over his perceived physical condition." AR 32. The ALJ incorporated this aspect of the doctors' opinions

in the RFC by restricting Plaintiff to low stress work. AR 32. However, the ALJ only accorded some weight to the remainder of the three opinions for the following reason:

> Although these evaluations were all provided through the claimant's primary care facility Group Health, they are quite divergent in their assessments. Dr. Tanaka opined to very restrictive limitations over nearly every area listed, whereas Dr. Laynor indicated that the claimant had very little restriction at all. . . . I note that these opinions were all authored at the same time despite their divergent findings; this tends to undermine the overall weight and underlying accuracy of the limitations noted.

AR 32. As to Dr. Leveaux, the ALJ also noted Dr. Leveaux "was unable to provide a specific functional assessment as he had only briefly treated the claimant." AR 32. Plaintiff argues these were not specific and legitimate reasons, supported by substantial evidence, for discounting three treating physician's opinions. The Court disagrees.

Even if a treating physician's opinion is not entitled to controlling weight under the regulations, "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §§ 404.1527 and 416.927]." SSR 96-2p, *available at* 1996 WL 374188. When an ALJ discounts the opinion of a treating physician, the ALJ must identify "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion and the reasons for that weight." SSR 96-2p, *available at* 1996 WL 374188. In the usual case, courts typically review an ALJ's rejection of a treating physician's opinion in favor of a conflicting opinion from an examining physician or non-examining, consulting physician to determine whether the ALJ offered specific, legitimate reasons, supported by substantial evidence, for discounting the treating physician's opinion. *See, e.g.*, *Tonapetyan*, 242 F.3d at 1149; *Lester*, 81 F.3d at 830.

But this is not the usual case. Here, *three* of Plaintiff's treating physicians, all of whom treated Plaintiff as part of the same health cooperative and who each rendered their opinions within a three-day span, opined to markedly different functional limitations. As the ALJ noted, all three of the treating physicians documented consistent clinical findings, especially as pertains to the impact of Plaintiff's anxiety. AR 926, 929, 936. *See also* AR 718, 733, 1036. However, the three treating physicians' opinions diverge quite substantially as to Plaintiff's functional limitations. Dr. Tanaka opined to restrictions consistent with, though not identical to, the requirements of sedentary work. *Compare* 20 C.F.R. §§ 404.1567, 416.967 *and* SSR 96-9p, *available at* 1996 WL 374185, *with* AR 926-27. Dr. Laynor, by contrast, opined to restrictions more consistent with the requirements of medium or heavy work, and opined Plaintiff would not need to take any unscheduled breaks during the work day. *Compare* 20 C.F.R. §§404.1567, 416.967 *and* SSR 83-10, *available at* 1983 WL 31251 *with* AR 936-38. Dr. Leveaux, acknowledging his minimal treatment of Plaintiff, indicated he was unable to offer an opinion as to any functional limitations whatsoever. AR 931-34.

"Where as here, medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample*, 694 F.2d at 642 (internal citations and quotations omitted). Further, inconsistency between medical opinions is a specific and legitimate reason to give less than full weight to a treating physician's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). *See also Batson*, 359 F.3d at 1195.

The *Morgan* case is particularly instructive. In *Morgan*, an examining physician and a treating physician rendered medical opinions "almost contemporaneous[ly]." *Morgan*, 169 F.3d at 601. However, the ALJ noted that despite their similar timing and underlying records, the

opinions contained numerous inconsistencies. *Id.* at 601-02. For example, one doctor opined Plaintiff was actively suicidal and only achieving moderate benefit from medication, while another doctor opined Plaintiff was *not* actively suicidal and achieved significant improvement from medication. *Id.* Confronted with these inconclusive and contradictory opinions, the Ninth Circuit held the Commissioner was the sole arbiter for "questions of credibility and resolution of conflicts in the testimony," and the ALJ could cite these inconsistencies as a basis to reject the treating physician's opinion in favor of the examining physician. *Id.*

Here, the ALJ noted Dr. Tanaka, Dr. Laynor, and Dr. Leveaux were members of the same medical group and rendered their opinions in a three-day span. AR 32. However, Dr. Leveaux did not opine to any limitations at all, while Dr. Tanaka and Dr. Laynor came to materially different conclusions. For example, Dr. Tanaka opined Plaintiff was incapable of low stress work, while Dr. Laynor opined Plaintiff *was* capable of low stress work. *Compare* AR 926 *with* AR 936. Dr. Tanaka also opined Plaintiff would need four to six unscheduled breaks throughout the workday, while Dr. Laynor opined Plaintiff would not need *any* unscheduled breaks throughout the workday. *Compare* AR 927 *with* AR 937. Given these inconclusive and contradictory opinions, the ALJ was entitled to cite the incongruity between the timing of the evaluations and the shared medical history at the same health cooperative, as compared to the significant variation in their opinions regarding Plaintiff's functional limitations, as a basis for giving all three opinions less than full weight.[2] *See Morgan*, 169 F.3d at 601-02.

---

[2] Though the ALJ did not find Plaintiff retained the capability to frequently lift weights up to 50 lbs, the ALJ incorporated most of Dr. Laynor's opined limitations into the RFC finding. *Compare* AR 29 *with* AR 935-38. As these limitations were directly contradictory to Dr. Tanaka's opined limitations, the ALJ incorporated Dr. Laynor's opined limitations to the exclusion of Dr. Tanaka's. *See Magallanes*, 881 F.2d at 755 (the Court itself may draw "specific and legitimate inferences from the ALJ's opinion.").

Furthermore, the ALJ's decision to give less than full weight to Dr. Laynor and Dr. Leveaux's opinions could not be considered harmful. The majority of Dr. Laynor's opinions, such as his opinion Plaintiff was capable of low stress work and would not require breaks throughout the work day, were actually incorporated into the RFC. *See* AR 29, 936-38. To the extent Dr. Laynor's opined limitations were inconsistent with the RFC, it is because the ALJ adopted limitations which were *more* restrictive than those opined to by Dr. Laynor.[3] *See* AR 29, 936-38. Further, as the ALJ noted, Dr. Leveaux did not even render an opinion as to *any* functional limitations. Instead, the ALJ explicitly accounted for the only issue which Dr. Leveaux opined to with any certainty: Plaintiff's symptoms were primarily caused by anxiety rather than atrial fibrillation. *Compare* AR 29 *and* 32 *with* AR 929-31. If the ALJ's RFC finding is more restrictive than, or otherwise accounts for, opined limitations from an acceptable medical source, there can be no harmful error. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding the ALJ correctly determined a treating physicians' report did not assign "any specific limitations on the claimant," but otherwise incorporated in the RFC what clinical observations the treating physician actually made). *See also Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 2000).

---

[3] Plaintiff argues the ALJ should have incorporated Dr. Laynor's opinion that Plaintiff would have to rest for 1 hour after his daily episodes of atrial fibrillation into the RFC. *See* AR 935. This argument misstates Dr. Laynor's opinion. While it is true Dr. Laynor opined Plaintiff would need rest after an episode of atrial fibrillation, Dr. Laynor *also* opined, as part of his functional assessment, Plaintiff would not need to take unscheduled breaks during a work day. AR 937. To the extent the ALJ incorporated Dr. Laynor's opinion into the residual functional capacity, it was well within the ALJ's authority to accept the concrete limitation contained in Dr. Laynor's functional assessment over a less specific finding in a different section of the opinion. *Cf. Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed.Appx. 15, 17-18 (9th Cir. 2012); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 174 (9th Cir. 2008) (ALJ was entitled to translate medical opinion into more concrete limitations opined to by different medical source).

Because the ALJ offered specific and legitimate reasons, supported by substantial evidence, for giving less than full weight to Dr. Tanaka's, Dr. Laynor's, and Dr. Leveaux's opinions, the ALJ did not err.

II. Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by Substantial Evidence, for Finding Plaintiff Not Fully Credible.

Plaintiff argues the ALJ erred by failing to offer specific, clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony.

**A. Standard**

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample*, 694 F.2d at 642 (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair,* 885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should

1  properly be discounted does not render the ALJ's determination invalid, so long as that
2  determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

### B. Application of Standard

4  At the hearing, Plaintiff testified to frequent panic attacks and anxiety, and further
5  testified he experiences episodes of atrial fibrillation five to six times per day, each lasting
6  between twenty and forty minutes. AR 30, 89-90, 97-98. Plaintiff also testified to headaches,
7  shortness of breath, dizziness, light headedness, and various other symptoms arising from his
8  heart conditions and mental health issues. *See* AR 103-04, 106-07. The ALJ found Plaintiff's
9  medically determinable impairments could reasonably be expected to cause the alleged
10 symptoms, but found the claimant's statements concerning the "intensity, persistence and
11 limiting effects of these symptoms are not entirely credible . . . ." AR 30. Plaintiff alleges the two
12 reasons the ALJ identified for discounting his subjective symptom testimony were not clear and
13 convincing reasons, nor were they supported by substantial evidence. However, while some of
14 Plaintiff's arguments are well-taken, the Court concludes the ALJ provided a specific, clear, and
15 convincing reason, supported by substantial evidence, for discounting Plaintiff's subjective
16 symptom testimony.

17 First, the ALJ found the objective medical evidence in the record contradicted Plaintiff's
18 testimony concerning the severity of his symptoms. AR 30-31 ("the claimant's allegations are
19 not consistent with the medical record medication [sic]"). This was proper. *See Regennitter v.*
20 *Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). *See also Bray v. Comm'r of*
21 *Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "While subjective pain testimony cannot
22 be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the
23 medical evidence is still a relevant factor in determining the severity of the claimant's pain and
24

its disabling effects." *See Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). Further, *inconsistencies* between a claimant's testimony and the medical evidence of record, rather than a mere lack of support from the medical evidence, is a clear and convincing reason, supported by substantial evidence, for giving less weight to a claimant's testimony. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Here, though Plaintiff claims he experiences four to five episodes of atrial fibrillation per day, each lasting between 20 and 40 minutes, the ALJ noted medical records post-dating his catheter ablation surgery in 2011 reflect Plaintiff has not had a reoccurrence of his atrial fibrillation. *See, e.g.*, AR 31, 722, 725, 733, 770 (indicating Plaintiff has undergone several Holter monitors of at least 24 hours in duration which documented minimal, if any, arrhythmia). The ALJ also noted Plaintiff's atrial myxoma "had not reoccurred [after his myxoma resection,] and the claimant had a normal left ventricular ejection fraction." AR 31, 348. Also, despite claiming neurological changes and frequent intermittent dizziness and lightheadedness, a neurologist noted there was "no obvious neurological cause" to Plaintiff's symptoms. AR 30-31, 400. The ALJ properly considered these inconsistencies between Plaintiff's testimony and the evidence contained in the medical records when assessing Plaintiff's subjective symptom testimony.

Second, the ALJ discounted Plaintiff's testimony concerning his disabling symptoms because she found it to be inconsistent with Plaintiff's activities of daily living. AR 31. Inconsistencies between a claimant's testimony concerning his limitations and the claimant's activities of daily living can be clear and convincing reasons for discrediting a claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, in this case, the ALJ's findings concerning Plaintiff's activities of daily living are unsupported by substantial evidence.

The ALJ cites three categories of Plaintiff's activities as being inconsistent with Plaintiff's subjective symptom testimony: A) Plaintiff's activities of self care, including preparation of some weekly meals, driving, grocery shopping, using a computer, counting change and using a checkbook; B) seven vacations Plaintiff had taken since his amended disability onset date; and C) approximately three months of part-time work Plaintiff performed between his amended disability onset date and his surgery to remove his atrial mxyoma. AR 31.

But, Plaintiff has consistently reported difficulties in performing his self care activities, and in any event, the activities cited by the ALJ are not inconsistent with claims of disability. AR 101-03, 285-92 *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled.") (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In addition, Plaintiff's vacations, as he described them, were conducted with some difficulty, and on at least two trips, Plaintiff "collapsed" and required medical attention. AR 83-88. Plaintiff's vacations are not "clear and convincing evidence that [Plaintiff] led a life that [was] not compatible with disabling pain and limitations." *Wilson v. Comm'r of Soc. Sec.*, 303 Fed.Appx. 565, 566 (9th Cir. 2008) (citing *Reddick*, 157 F.3d at 722). Finally, Plaintiff's attempts to continue working part-time after his amended disability onset date actually lend credence to Plaintiff's claim his impairments were disabling. AR 68-70, 100-01. "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).

Thus, Plaintiff's activities of daily living were not a clear and convincing reason, supported by substantial evidence, for giving Plaintiff's subjective symptom testimony less than

full weight. However, as the ALJ cited another clear and convincing reason for giving Plaintiff's testimony less than full weight—namely, inconsistencies between Plaintiff's testimony and the medical records—any error in the ALJ's analysis of Plaintiff's testimony is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115-17 (9th Cir. 2012); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson*, 359 F.3d at 1197.

Because the ALJ had a specific, clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony, the ALJ did not err.

III.     Whether the ALJ Provided Germane Reasons for Rejecting the Lay Witness Evidence in the Record

Plaintiff offered the testimony of two lay witnesses: his partner, Ned Lichty, and Jennifer Hibbeln, the manager of Plaintiff's former business. AR 109-23, 324. Both lay witnesses testified that Plaintiff experienced symptoms substantially identical to those which he himself had described: Plaintiff struggled to perform work after his disability onset date, experienced shortness of breath, dizziness, panic attacks, and increasingly frequent episodes of atrial fibrillation. AR 115-16, 324.

The ALJ did not discuss the lay witness testimony at all in the written decision. This was error. In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR 06-03p, 2006 WL 2329939 at *2. However, "an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina*, 674 F.3d at 1121-22. As in *Molina*, Ms. Hibbeln and Mr. Lichty's testimony does not describe limitations beyond what Plaintiff himself described. Further, the ALJ provided a clear and convincing reason, supported

by substantial evidence, for discounting Plaintiff's testimony: namely, Plaintiff's testimony was inconsistent with the medical record. *See* Section II(B), *supra*. This reasoning applies equally well to the lay witness testimony at issue here; thus, any error in the ALJ's failure to disregard the lay witness testimony was harmless.

IV. Whether the ALJ Erred in Assessing Plaintiff's Residual Functional Capacity and in Evaluating Plaintiff's Ability to Work at Step Five of the Sequential Evaluation

Plaintiff argues, in conclusory fashion, that the ALJ's RFC determination is flawed as it did not include all of the limitations associated with Plaintiff's severe impairments. Plaintiff also argues this necessarily means the ALJ's findings at Step Five were erroneous, as the hypotheticals propounded to the vocational expert were based on a flawed RFC. However, as discussed in Sections I, II, and III, above, the ALJ properly weighed the medical opinion evidence, properly discounted Plaintiff's credibility, and did not commit harmful error in failing to properly evaluate the lay witness testimony. Thus, there was no error in the ALJ's assessed RFC, as it included all of Plaintiff's credible limitations, nor was there any error at Step Five.

## CONCLUSION

Based on the above stated reasons and the relevant record, the undersigned finds the ALJ properly concluded Plaintiff was not disabled. Therefore, the Court orders this matter be affirmed pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for Defendant and the case should be closed.

Dated this 1st day of July, 2016.

David W. Christel
United States Magistrate Judge